[Sac. No. 7402. In Bank. Mar. 7, 1963.]

CALIFORNIA-WESTERN STATES LIFE INSURANCE COMPANY Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, VIOLA B. BAIRD et al., Respondents.

Downey, Brand, Seymour & Rohwer, John F. Downey and Howard L. Jeske for Petitioner.

Everett A. Corten, Emily B. Johnson, Rupert A. Pedrin, Weingand, Tipton, Kendig & Stockwell, Jaffe, Mallery & Thompson and Herlihy & Herlihy for Respondents.

Barry Satzman, Ellsworth H. Kendig, Jr., and Barry F. Evans as Amici Curiae on behalf of Respondents.

TOBRINER, J.—California-Western States Life Insurance Company (hereinafter called petitioner) seeks review of an order of the Industrial Accident Commission which, approving a compromise agreement between the employee, the employer and the latter's workmen's compensation insurance carriers, awarded petitioner $250 in full satisfaction of its lien claim for $1,105. We shall explain why petitioner's objection to the order of the commission on the ground that it failed to render

findings cannot stand; the contention conflicts with the express statutory scheme for compromise and settlement. We shall likewise set forth the reasons for our rejection of petitioner's further objection to the formula of settlement.

In 1953 Viola B. Baird was employed by Virgil K. Benton as an accountant and general office manager. The business rapidly expanded, and, with its growth, Mrs. Baird's responsibilities increased. Mrs. Baird did not take regular vacations but at spasmodic intervals only a few days' leave, which on no occasion composed a full two weeks for the year; in 1959, because of the heavy workload, she took no vacation at all. She worked almost every Saturday and some Sundays; she often took work home.

In March 1960 Mr. Benton hired a controller who became Mrs. Baird's supervisor. The controller moved Mrs. Baird out of her private office and into the general office area. Immediately thereafter during "a heated discussion" with Mr. Benton, Mrs. Baird collapsed and was taken to a hospital for treatment.

Mrs. Baird applied to her employer's workmen's compensation insurance carrier for temporary disability benefits under the Workmen's Compensation Act; the commission denied her claim. She thereupon properly filed for unemployment compensation disability (hereinafter termed U.C.D.) benefits; accordingly petitioner paid to Mrs. Baird $65 per week for the period April 17 to August 13, 1960, computing a total of $1,105. (Unemp. Ins. Code, §§ 3251-3271.) Mrs. Baird consented to the allowance of a lien to petitioner against any recovery of workmen's compensation benefits that she might receive as the result of her claim against her employer and his workmen's compensation insurance carriers.

On December 2, 1960, Mrs. Baird entered into a compromise and release agreement with her employer and his workmen's compensation insurance carriers settling her claim for the lump sum of $8,500. The compromise agreement proposed that Mrs. Baird's attorneys receive $850 for their services, and that petitioner's lien claim in the sum of $1,105 be reduced to $200 by a formula which the commission had previously used in *Davis* v. *Blaser* (1958) 24 Cal. Comp. Cases 100. Petitioner neither became a party to this agreement nor did it participate in any of the negotiations that culminated in the compromise.

Applying the *Davis* formula the parties to the settlement

computed the total value of Mrs. Baird's claim as if she were to prevail in all her contentions:

| | |
|---|---:|
| Permanent Disability (based upon a rating of 72% as adjusted for age and salary) | $15,120.00 |
| Life Pension (based upon $14.52 per week for the life expectancy of Mrs. Baird, which was 12 years) | 9,060.48 |
| Temporary Disability from March 17, 1960 to March 17, 1961 | 3,380.00 |
| Past Medical Treatment | 1,000.00 |
| Estimated Future Medical Treatment | 2,000.00 |
| | $30,560.48 |

In the compromise agreement the parties deducted $3,000, the amount of the past and future medical treatment, from the lump sum settlement of $8,500, leaving $5,500. The agreement then proposed that petitioner's lien be allowed only in an amount that would bear the same ratio to the net lump sum of $5,500 that the total lien claim ($1,105) bore to the total sum claimed by Mrs. Baird ($30,560.48). By this formula petitioner's lien claim was reduced to 1/29th of the $5,500 lump sum payment or $200.

On December 14, 1960, the proposed compromise agreement was filed with the commission. Petitioner received a copy; on December 20 it filed objections to the compromise. The commission held a hearing on the matter; petitioner did not appear but agreed to submit, on the evidence already introduced, its lien claim and its written comments. On February 9, 1961, the commission approved the compromise and release, ordering that Liberty Mutual Insurance Company pay to Mrs. Baird the sum of $4,085, that Industrial Indemnity Company pay to Mrs. Baird the sum of $2,460 and to her attorneys $850; and that Liberty Mutual withhold the sum of $1,105 pending further order.

Upon further consideration of the pending lien claim and determination that the original reduction was not "reasonable," the commission, still relying on the basic *Davis* formula, rendered, on March 27, 1961, its order allowing petitioner's lien claim in the sum of $250 rather than the suggested $200. The commission based its decision on the "material uncertainty as to whether [Mrs. Baird's] disability was industrial or whether her disability would have occurred in any event." It further ordered the balance of the sum withheld, $855, paid to Mrs. Baird.

Petitioner then requested that the commission reconsider its lien claim. It asserted that the filing of the compromise and release agreement did not relieve the commission from making a finding as to the right of Mrs. Baird to receive temporary disability compensation for the purpose of determining the extent of California-Western's lien recovery (Lab. Code, § 4904) ; it questioned the propriety of use of the *Davis* formula because it allowed medical costs in full but reduced other claims on a proportional basis. On May 4, 1961, the commission denied the petition for reconsideration.

As we have stated, petitioner presents for our consideration two questions: (1) whether jurisdiction was vested in the commission to approve the compromise and release agreement in the absence of its rendition of a specific finding as to Mrs. Baird's right to temporary disability benefits and the period of such disability; and (2) whether the commission could properly reduce petitioner's lien by application of a formula that allowed other liens in full. We first undertake to explain why we have concluded that the statute, as amended by the Legislature in 1957, in a case such as this, involving a compromise and release agreement, does not impose the requirement of findings.

The history of the decisions and the legislation, as we shall point out, confirms our interpretation. The pertinent legislation consists of the general and introductory section 4903 of the Labor Code and the more specific section 4904. Section 4903 reads: "The commission may determine, and allow as a lien against any amount to be paid as compensation: . . . (f) . . . [t]he amount of unemployment compensation disability benefits which have been paid under or pursuant to the Unemployment Insurance Code in those cases where, pending a determination under Division 4 of this code, there was uncertainty whether such benefits were payable under the Unemployment Insurance Code or payable hereunder; provided, however, any lien under this subdivision shall be allowed and paid as provided in section 4904."

Section 4904 of the Labor Code was amended in 1957; the amendment basically changed the rulings of this court in *Bryant* v. *Industrial Acc. Com.* (1951) 37 Cal.2d 215 [231 P.2d 32] and *Aetna Life Ins. Co.* v. *Industrial Acc. Com.* (1952) 38 Cal.2d 599 [241 P.2d 530], which analyzed the previous statutory provisions. Prior to 1957, section 4904 of the Labor Code provided as follows: "If notice in writing is given to the

insurer, or to the employer if uninsured, setting forth the nature and extent of any claim that is allowable as a lien, the claim is a lien *against any amount thereafter payable as compensation,* subject to the determination of the amount and approval of the lien by the commission. The commission may order the amount of such claim, as determined and allowed by it, to be paid directly to the person entitled, either in a lump sum or in installments." (Emphasis added.)

Pursuant to this section we held in *Bryant* v. *Industrial Acc. Com., supra,* a case involving an award after findings of the commission as contrasted with an approval of a compromise and settlement agreement as in the present case, that the U.C.D. lien covered both the temporary and permanent disability allowance of the award. Since that lien applied against amounts paid as "compensation," and since "compensation" included permanent disability payments, the lien properly attached to the *entire workmen's compensation award* for disability benefits paid during the uncertain period pending final determination by the Industrial Accident Commission.

In *Aetna Life Ins. Co.* v. *Industrial Acc. Com., supra,* the commission, while the *Bryant* case was pending before this court, denied the U.C.D. lien, stating that the amount payable under a compromise agreement to the disabled employee was not "workmen's compensation" subject to the lien. We held the contention "untenable." We said that "a disabled workman is not entitled to unemployment compensation disability benefits for a period of unemployment caused by a disability for which he is entitled to workmen's compensation" (p. 600). Accordingly, the commission should, in the presence of a compromise agreement reached by the disabled employee and the workmen's compensation carrier, 'determine the period of disability for which the employee is entitled to compensation and allow the claimed lien for the amount of unemployment disability benefits paid during that period" (p. 605).

In 1957 the Legislature amended section 4904 of the Labor Code by adding the following italicized portions: "If notice is given in writing to the insurer, or to the employer if uninsured, setting forth the nature and extent of any claim that is allowable as a lien, the claim is a lien against any amount thereafter payable as compensation, subject to the determination of the amount and approval of the lien by the commission. *In determining the amount of lien to be allowed for unemployment compensation disability benefits under sub-*

*division (f) of Section 4903 the commission shall allow such lien in the amount of benefits which it finds were paid for the same day or days of disability for which an award of compensation for temporary disability indemnity is made. In the case of agreements for the compromise and release of a disputed claim for compensation, the applicant and defendant may propose to the commission, as part of the compromise and release agreement, an amount out of the settlement to be paid to any lien claimant claiming under subdivision (f) of Section 4903. The determination of the commission, subject to petition for reconsideration and to the right of judicial review, as to the amount of lien allowed under subdivision (f) of Section 4903, whether in connection with an award of compensation or the approval of a compromise and release agreement, shall be binding on the lien claimant, the applicant, and the defendant, insofar as the right to benefits paid under the Unemployment Insurance Code for which the lien was claimed.* The commission may order the amount of any lien claim as determined and allowed by it, to be paid directly to the person entitled, either in a lump sum or in installments.''

The 1957 amendment of section 4904 altered in substance the holding of *Bryant* v. *Industrial Acc. Com., supra,* that a U.C.D. lien could be allowed against the award for *permanent* disability benefits as well as the award for temporary disability benefits. (See *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (1959) 170 Cal.App.2d 412, 421 [339 P.2d 225].) The amendment further clearly manifests the Legislature's purpose to distinguish between the method of disposition of liens for unemployment compensation disability benefits in cases in which findings and an award are rendered and those in which compromise agreements are effected.

The second sentence of the section requires a finding for the days of ''temporary disability'' payments *only* in cases of an *award.* Obviously the award contemplates a finding that the injury arose out of and occurred in the course of employment, as well as findings on all other matters at issue in the case. Significantly, the Legislature did not in that connection refer to ''compromise agreements.'' The third sentence of the section, however, separately provides the procedure for the distinctive situation of ''agreements for the compromise and release of a disputed claim for compensation.'' Here the Legislature omits any requirement for findings but instead provides that the parties may *propose* to the commission, as part of the

"compromise," an amount out of the settlement for the commission's consideration for payment to the lien claimant.

The contrasting phraseology of the two sentences demonstrates that the Legislature envisaged a different method of approach and computation in the respective procedures. Under this 1957 amendment, the parties' proposal of the amount for settlement of the lien binds neither the commission nor the lien claimant; the latter manifestly must be heard on this issue. But the reference to the proposal of "an amount" *out of the settlement* to be paid to any lien claimant indicates that the amount may properly be less than the total lien claims. The fourth sentence of section 4904 emphasizes the validity of the above interpretation in that it provides that the "determination of the commission, subject to petition for reconsideration and to the right of judicial review . . . whether in connection with an award of compensation or the approval of a compromise . . . shall be binding on the lien claimant, the applicant, and the defendant. . . ." It thereby recognizes that the preceding two sentences establish two separate legal approaches to the payment of lien claims; it accords equal validity to both.

Other sections of the Unemployment Insurance Code further substantiate the Legislature's intent to provide two distinct methods for disposition of compensation claims. Thus Unemployment Insurance Code, section 2735.5, added in 1957, provides that " [N]o claim of overpayment shall be based upon" the commission's "disallowance . . . of a claim of lien" or the "allowance of such lien for less than the amount claimed" *or* "upon the approval" by the commission "of a compromise and release agreement providing for the allowance of such lien in an amount less than the claim." Section 2741 of that code declares that " [A]ny claim of lien filed with the" commission "shall be fully discharged and satisfied by payment of the amount of such lien allowed by the commission" *or* "the amount specified in any compromise and release agreement filed and approved by the commission pursuant to Sections 5000 through 5004 of [the Labor] code." In 1957 the Legislature also amended section 5003 of the Labor Code by adding subdivision (f) setting forth as another item that must be specified in a "release or compromise agreement," involving a lien claim as is here presented, "the number of days and the amount of temporary disability indemnity which should be allowed to the lien claimant."

We conclude that in requiring the submission of the above

additional items the Legislature clearly intended such data to serve as an aid to the commission in assessing the adequacy of the *proposal* for settlement of the lien claim in the compromise agreement provided under section 4904. Thereby it gave effect to the ''general tenor and scope of the entire scheme'' of the 1957 amendment to section 4904 in its specific procedure for compromise agreements in settlement of disputed compensation claims. (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 639 [122 P.2d 526].)

Petitioner's answering arguments do not defeat the above interpretation. We turn to an analysis of petitioner's three basic objections: (1) that the interpretation deprives the lien claimant of procedural due process; (2) that it discourages the unemployment insurance carrier from advancing temporary disability payments; and (3) that it disregards section 5313 of the Labor Code.

As to procedural due process, the statute affords the general protection that the lien claimant may petition the commission for reconsideration and exercise the right of judicial review. Moreover, it may participate in the specific process of settlement of the lien claim. The 1957 amendment provides that the principal parties submit to the commission their proposal for a fair ''amount'' as allowance for such claim. In the present case the commission not only notified petitioner of every step in the proceedings but also afforded it an opportunity to be present at the hearing at which the adequacy of the allowance was determined. While petitioner did not appear at this hearing, it submitted its views in writing. It cannot properly complain of a deprivation of procedural due process.

We find no merit in petitioner's second objection that the commission's construction of the statute will thwart the legislative design of encouragement of prompt payments of benefits under the Unemployment Insurance Act. Petitioner contends that the instant procedure will permit the employee, the employer and the compensation carrier arbitrarily to reduce a lien by means of a compromise agreement which may be ''rubber stamped'' by the commission and that the U.C.D. carrier will consequently hesitate to advance temporary disability payments.

The contention collapses for three independent reasons. In the first place, the statute itself requires the payment of the disability compensation by the unemployment insurance

disability carrier whether or not the employee's right to workmen's compensation is later established. Secondly, the 1957 amendment of section 4904, providing for the procedure for a compromise agreement, does not sanction an arbitrary reduction of the claim but a "proposal" as to the "amount out of the settlement to be paid to" the lien claimant. The proposal is to be submitted to, but not to bind, the commission. Thirdly, the 1957 amendment contemplates the full protection of the lien claimant by affording it an opportunity to be heard in the proceeding.

Petitioner's final objection that Labor Code section 5313 compels the rendition of findings in the instant case neglects the difference between the procedure which entails controversy and that which involves compromise. Section 5313, in part, provides that the commission shall "make and file findings upon all facts involved in the controversy. . . ." As petitioner points out, the 1957 amendments did not change this language, and the duty remains with the commission to find on all material issues in dispute. If the validity of a lien claim based upon unemployment disability payments constituted an issue in dispute, the commission would find the amount paid by the lien claimant, the period covered by such payment, the period of temporary disability and the amount due under the award for such period of temporary disability. The period of "daily duplication" of the two payments would thus establish the amount recoverable by the lien claimant; the commission would render an appropriate finding on the matter.

A compromise agreement in settlement of a disputed compensation claim, however, presents a contrasting situation. In the special procedure of compromise, the commission's role involves only the determination of the overall adequacy and general fairness of the settlement to all parties, including lien claimants. Here the commission set forth its considered amount of fair allowance for the lien claimant; it thereby effectuated the compromise procedure. The two distinct procedures for adjudication of disputed compensation claims—that is, the findings and award and the compromise agreement—were "harmonized" and the legislation interpreted in its integrated design. (*California Comp. Ins. Co. v. Industrial Acc. Com.* (1954) 128 Cal.App.2d 797, 810 [276 P.2d 148, 277 P.2d 442].)

 We turn to petitioner's second basic contention: the allegedly arbitrary allocation of the amount payable to the disability carrier by the application of the *Davis* formula. Petitioner suggests that such a procedure deprives it of property without due process of law. We find no merit in its various attacks upon the formula, which, as we have stated, does no more than compute the total amount of the respective claims for temporary and permanent disability as if they prevailed, and then reduces them proportionately according to the actual amount of the settlement.

Thus we cannot accept the argument that the commission improperly applied the formula because it allowed liens in full for attorneys' fees, as well as for incurred and anticipated medical costs, while it proportionately reduced petitioner's lien. The proper allocation of the amounts to be awarded for temporary as compared to permanent disability is one matter; the legal and medical expenses are another. If the U.C.D. lien cannot apply to permanent disability payments it could not apply to such an item as medical costs. We find no abuse of the commission's discretion in proportionately reducing the amounts for disability and in allowing the attorneys' and medical liens.

Petitioner unsuccessfully attempts to buttress its contention by the citation of *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (1959) 170 Cal.App.2d 412 [339 P.2d 225]. There the employee's award could not meet both the U.C.D. lien and the lien for the attorney fees. Although the commission held that U.C.D. be reduced so that the fee might be paid in full the District Court of Appeal ruled that since the fee was properly chargeable against the employee's recovery, the U.C.D. lien should obtain priority and not be reduced to permit payment of the fee. The employee "was not entitled to receive both workmen's compensation benefits and unemployment disability benefits" (p. 420); yet by reducing the lien to accommodate the payment of the fee such was the result.

The facts and conclusions in *Fireman's Fund Indem. Co.* do not apply here. The allowance of attorney fees, $850, was paid out of Mrs. Baird's share of the compromise and not considered in any way in computing petitioner's recovery on its lien claim. The compromise was sufficient in amount to have allowed the payment of both the attorney fees and petitioner's lien in full if the commission had so ordered in con-

sidering the fairness and adequacy of the compromise agreement under all the circumstances.

This case appears to be precisely the type of situation that the 1957 amendment to section 4904 was intended to cover. Petitioner had accepted premium payments for the purpose of insuring Mrs. Baird, the employee, against a disability which was not covered by workmen's compensation. Indeed, the commission originally denied coverage here. Mrs. Baird might have elected not to litigate her workmen's compensation claim and in that event petitioner would not have recouped at all. If she did proceed and an award were rendered in which disability and compensation payments were duplicated, then petitioner could accordingly recoup. In the instant case, however, the issue of whether Mrs. Baird's disability suffered an industrial injury was a doubtful one; both she and the workmen's compensation carriers deemed it more advantageous to compromise.

The Legislature has encouraged compromises. (Lab. Code, § 5000.) Now to permit a third party, a lien claimant who could assert no right to recoupment at all in the absence of a workmen's compensation proceeding, to interfere with the settlement and force the rendition of findings would be to nullify the procedure for compromise.

Requisite to the resolution of the overlapping of the statutory coverage of protection of the worker by means of unemployment and disability compensation is a clear and fast means of adjustment. A submission to the commission, for its final determination, of a proposed basis for settlement is highly desirable, and the Legislature had manifested its intent to implement it. To destroy such expedition of settlement by the imposition of debilitating technicality finds justification neither in the legislative purpose nor the social imperatives.

The order of the commission is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peters, J., concurred.

Petitioner's application for a rehearing was denied April 3, 1963. Peek, J., did not participate therein.