[L.A. No. 30321. In Bank. Dec. 5, 1974.]

KAISER FOUNDATION HOSPITALS et al., Petitioners, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
THE STATE OF CALIFORNIA et al., Respondents.

## COUNSEL

Walter A. Stringfellow III, William R. Russell and Thelen, Marrin, Johnson & Bridges for Petitioners.

Charles Lawrence Swezey, Sheldon C. St. Clair, Thomas J. McBirnie, Philip M. Miyamoto, T. Groezinger, James J. Vonk, George S. Bjornsen and Robert A. La Porta for Respondents.

## OPINION

**BURKE, J.**\*— In this case we consider the question whether the Workmen's Compensation Appeals Board has authority to reduce the size of an otherwise proper medical or hospital services lien (see Lab. Code, § 4903, subd. (b)), upon an injured employee's compensation recovery, on the ground that such reduction would be "fair and equitable" in light of a compromise and release of the employee's compensation claims with the employer and his insurer.

We have concluded that, in the absence of the lienholder's consent, the board has no authority to reduce a valid lien solely to accommodate such a settlement. We further hold, however, that the lienholder in such a situation must establish at least a prima facie case that the treatment rendered was for an injury allegedly received in the course and scope of employment and, therefore, properly the subject of a claim for workmen's compensation upon which a medical or hospital services lien might attach.

In the instant case, employee Keifer had filed a claim for compensation, alleging that he had developed a heart condition as a result of his work with the state (Department of Building and Safety). Keifer died in December 1971 and his widow filed a supplemental claim for benefits. In October 1971 petitioners, who had provided medical and hospital care to Keifer, filed with the board a request for allowance of a lien in the amount of $4,420.50.

In July 1972 Mrs. Keifer and the State Compensation Insurance Fund entered into a compromise and release agreement whereunder her claim was settled for the sum of $17,236, of which $1,815 was to be paid to petitioners. The agreement recited in part that the reason for the compromise was "The question of death arising in the course and scope of employment is in issue. . . . The parties wish to avoid the risk of litigation. Defendants desire to buy their peace. . . ." The referee approved the compromise (Lab. Code, § 5002), and subsequently ruled that petitioners be paid $1,815 in satisfaction of their lien. Petitioners sought reconsideration by the board, and in November 1973 the board denied the same, holding that it had authority to reduce petitioners' lien on the basis of the substantial doubt whether or not Keifer's injury and death were industrially

---

\*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

caused.[1] Petitioners seek our review of the board's decision, contending that under the applicable authorities the board is without power to reduce for "equitable" reasons an otherwise valid lien for medical and hospital services. We agree.

The subject of workmen's compensation liens is covered in Labor Code section 4903 et seq. Under section 4903, the board "may determine, and allow as liens against any sum to be paid as compensation . . . (b) The reasonable expense incurred by or on behalf of the injured employee, as provided by Article 2 of Chapter 2 of Part 2 of this division [medical and hospital treatment] . . . ."[2] Other subdivisions of section 4903 provide for liens for legal services, burial expenses, family living expenses, and unemployment compensation benefits.

■ Thus, as a general rule, the board "may allow, as a lien against an award pursuant to Labor Code section 4903, subdivision (b), the reasonable expenses incurred for or on behalf of an injured employee in obtaining 'medical and hospital' treatment for an industrial injury by one who is obligated to furnish such treatment for a nonindustrial disability only, where such expenses have been assumed under the mistaken belief that the disability was nonindustrial." (*Dept. of Employment* v. *Ind. Acc. Com.*, 227 Cal.App.2d 532, 539-540 [38 Cal.Rptr. 739]; see *Foremost Dairies* v. *Industrial Acc. Com.*, 237 Cal.App.2d 560, 579 [47 Cal.Rptr. 173]; *Gerson* v. *Industrial Acc. Com.*, 188 Cal.App.2d 735 [11 Cal. Rptr. 1].)

The lien attaches to "compensation" to be paid to the injured employee or his dependents. ■ "Compensation" is defined as "the measure of the responsibility which the employer has assumed for injuries or deaths which occur to employees in his employment when subject to this division. . . ." (Lab. Code, § 5001.) Accordingly, the term includes any amounts to be paid by the employer and its insurer under a compromise and release agreement approved by the board. (*Aetna Life Ins. Co.* v.

---

[1]The board's decision pointed out that had Mrs. Keifer prevailed in her claim for compensation, she would have recovered in excess of $25,000, that the evidence was, however, far from clear on the issue of industrial causation, that to require full payment of outstanding liens would discourage settlements, and that accordingly the board had authority to reduce the amount of the lien in order to achieve a "fair and equitable" result for all parties.

[2]Under Labor Code section 4906, "No charge, claim, or agreement for the legal services or disbursements mentioned in subdivision (a) of Section 4903 [legal services], or for the expense mentioned in subdivision (b) of Section 4903 [medical services], is enforceable, valid or binding in excess of a reasonable amount. The appeals board may determine what constitutes such reasonable amount."

*Ind. Acc. Com.,* 38 Cal.2d 599, 604 [241 P.2d 530]; *Garcia* v. *Industrial Accident Com.,* 41 Cal.2d 689, 693 [263 P.2d 8].) ■ As we recently stated, "It is settled law that an. approved compromise and release agreement has the same force and effect as an award made after a full hearing. [Citations.]" (*Ogden* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 192, 196 [113 Cal.Rptr. 206, 520 P.2d 1022].) In *Aetna,* we expressly held that a section 4903 lien would attach to the amount payable under a compromise and release agreement.

■ Although the language of section 4903 appears to grant the board wide discretion to grant or deny liens (see also Lab. Code, § 4906, set forth in fn. 2, *ante*) that discretion is limited to determining whether or not the amount of the lien is reasonable in relation to the medical services rendered to treat the employee's injuries. Thus, this court has held that the board is without discretion to disallow a lien if the claimant has established that he furnished services or living expenses of value in connection with an industrial accident. (*Bryant* v. *Industrial Acc. Com.,* 37 Cal.2d 215, 220 [231 P.2d 32].)[3] And in *County of Contra Costa* v. *Industrial Acc. Com.,* 212 Cal.App.2d 585, 586 [28 Cal.Rptr. 303], the Court of Appeal held that: "[o]nce it has determined the amount due the lien claimant, the commission has discretion neither to deny the lien nor, save for prorating where the award is insufficient to cover all liens,[4] to reduce it (*Bryant* v. *Industrial Acc. Com.* [*supra*], 37 Cal.2d 215 . . . ; and see *Garcia* v. *Industrial Acc. Com.,* 162 Cal.App.2d 761 . . .). It is for the Legislature, rather than the courts, to determine whether the discretion here sought should be vested in the commission. We cannot amend the statute to grant such discretionary power, and the Legislature has notably failed to do it in the 11 years since *Bryant* was decided."

Although the *Contra Costa* decision did not mention the fact, the Legislature in a 1957 amendment did provide the board with discretionary power to reduce liens for unemployment compensation benefits, in the event of a compromise and release of a disputed claim for compensation. In 1957 Labor Code section 4904[5] was amended to provide in pertinent

---

[3]We pointed out in *Bryant* that the board did have discretion to reduce pro rata two competing lien claims (for rent and attorneys' fees) where the compensation award was insufficient to pay both liens, since "this was the most equitable way to obtain the desired result, that is, not to discourage landlords from furnishing quarters to injured employees and not to discourage attorneys from representing them." (Pp. 220-221.)

[4]See footnote 3, *ante.*

[5]Prior to the 1957 amendment section 4904 specified the procedure for perfecting an allowable lien.

part as follows: "In the case of agreements for the compromise and release of a disputed claim for compensation, the applicant and defendant may propose to the appeals board, as part of the compromise and release agreement, an amount out of the settlement to be paid to any lien claimant *claiming under subdivision (f) or (g) of Section 4903* [liens for unemployment compensation disability benefits and unemployment compensation benefits]. *The determination of the appeals board,* subject to petition for reconsideration and to the right of judicial review, *as to the amount of lien allowed* under subdivision (f) or (g) of Section 4903, whether in connection with an award of compensation or the approval of a compromise and release agreement, *shall be binding on the lien claimant,* the applicant, and the defendant, insofar as the right to benefits paid under the Unemployment Insurance Code for which the lien was claimed." (Italics added.)

We held in *California-Western States Life Ins. Co.* v. *Industrial Acc. Com.,* 59 Cal.2d 257 [28 Cal.Rptr. 872, 379 P.2d 328], that the foregoing amendment was intended to permit the board, in approving a compromise and release, to reduce the amount of an unemployment benefits lien.[6] As we stated in that case (pp. 267-268), ". . . the 1957 amendment of section 4904, providing for the procedure for a compromise agreement, does not sanction an arbitrary reduction of the [lien] claim but a 'proposal' as to the 'amount out of the settlement to be paid to' the lien claimant. The proposal is to be submitted to, but not to bind, the commission. . . . [¶] We find no merit in its [petitioner/lien claimant's] various attacks upon the [allocation] formula, which . . . does no more than compute the total amount of the respective claims for temporary and permanent disability as if they prevailed, and then reduces them proportionately according to the actual amount of the settlement. [¶] Thus we cannot accept the argument that the commission improperly applied the formula because it allowed liens *in full* for attorneys' fees, *as well as for incurred and anticipated medical costs,* while it proportionately reduced petitioner's lien. The proper allocation of the amounts to be awarded for temporary as compared to permanent disability is one matter; *the legal and medical expenses are another.* If the U.C.D. [unemployment compensation disability] lien cannot apply to permanent disability payments it could not apply to such an item as medical costs. We find no abuse of the commission's discretion in proportionately reducing the amounts for disability and in allowing the attorneys' and medical liens." (Italics added.)

---

[6]We did not discuss the *Contra Costa* case, *supra,* in our opinion in *California-Western,* probably because the cases were decided at approximately the same time, February and March 1963.

The *California-Western* case thus indicates that although, in a compromise situation such as the instant case,[7] the board may reduce unemployment benefit liens by reason of the 1957 amendment to section 4904, it has no like discretion to reduce the amount of other allowable liens. Nevertheless, the board's decision herein had stated that "The 1957 legislation clearly indicates an intention on the part of the Legislature that liens in compromised cases be adjudicated in a distinctly different manner than liens in cases which go to award." Accordingly, the board reasoned that it had implied authority to reduce petitioners' lien herein. Yet as we recently noted in a similar case involving interpretation of section 4903 (allowable liens), "Under the well-known rule of statutory interpretation, *expressio unius est exclusio alterius,*" in view of the inclusion by the Legislature of specific provisions applicable to unemployment benefit liens, the Legislature's failure to enact similar provisions for other liens "seems intentional." (*Ogden* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d 192, 198.) ■ Thus, we conclude that section 4904 does not furnish a basis for reduction of liens other than unemployment benefit liens.

The board contends, however, that we should affirm its decision on the ground that petitioner failed to prove that Keifer's condition was industrially related. First of all, it does not appear that either the referee or the board placed their decision on this ground. The board did explain that since the issue of causation was a close one, the parties elected to compromise the matter and that consequently it was "fair and equitable" to reduce petitioners' lien claim proportionately. But the board did not suggest in its decision that *petitioners* had to prove causation to the board's satisfaction before the full amount of their claim would be paid.

■ It is true, of course, that no lien for medical or hospital services is allowable if those services were rendered in connection with a nonindustrial injury. (*Williams* v. *Industrial Acc. Com.,* 64 Cal.2d 618, 619 [51 Cal.Rptr. 277, 414 P.2d 405]; *Western Union Tel. Co.* v. *Fibush,* 4 Cal. 2d 185, 187 [48 P.2d 37]; *Department of Mental Hygiene* v. *Industrial Acc. Com.,* 183 Cal.App.2d 832, 833-834 [7 Cal.Rptr. 257].) And without question, following a hearing on the matter, the board properly could make a determination that the employee's condition was not industrially related, and could disallow a claim of lien for that reason. (*Id.*) But no such procedure was followed in the instant case. The board, *without resolving the causation question,* purported to reduce (not disallow) peti-

---

[7]The *California-Western* case involved a similar compromise situation fostered by considerable uncertainty regarding industrial causation. (See 59 Cal.2d at p. 269.)

tioners' lien on the basis of what the board considered to be "fair and equitable." As explained above, the board has no authority to effect such a reduction in this manner.

We do not intend to suggest that the board must determine the question of industrial causation in every case in which a lien is asserted against proceeds to be paid under a compromise agreement. Often, as in the instant case, that question poses substantial difficulties. ■ We do hold, however, that a lien claimant's otherwise valid lien for medical or hospital services may not be reduced solely by reason of the complexity of the causation question. If the board or the employee believes that the lien claim is disproportionately large in comparison with the employer's compromise offer, then either the compromise should be rejected, or the question of causation litigated (see *Aetna Life Ins. Co. v. Ind. Acc. Com., supra,* 38 Cal.2d 599, 605; *Garcia v. Industrial Accident Com., supra,* 41 Cal.2d 689, 694-695), or, as a further alternative, the cooperation of the lien claimant sought in order to effect a compromise under which the lien is voluntarily reduced.

■ In the instant case, the board does not dispute the fact that petitioners furnished medical and hospital services to Keifer which pertained to the injury or condition for which "compensation" (here in the form of payments under a compromise and release agreement) is being provided. Accordingly, we conclude that petitioners have established a prima facie case for the allowance of the full amount of their lien.[8]

The decision of the appeals board is annulled and the case remanded to the board for further proceedings consistent with this opinion.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

---

[8]As explained in *Garcia, supra* (41 Cal.2d at p. 694), there exists "great practical difficulty" in requiring a lien claimant to produce evidence of an industrial injury, "where the employe who has first hand knowledge of those matters and the insurance carrier who has immediate opportunity to investigate them decline to produce such evidence and instead elect to compromise." Accordingly, it is sufficient that the lien claimant establish a "prima facie" case by submitting evidence that the lien arose by reason of services rendered the employee in connection with an injury or event for which the employee claimed and is awarded compensation under a compromise agreement. "If there was to be any further showing as to the nature and period of the disability it should have come from the employe or the insurance carrier." (*Id.,* p. 695.)