[Civ. No. 15877. Third Dist. Oct. 1, 1976.]

DEPARTMENT OF EMPLOYMENT DEVELOPMENT, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD, JAMES J. GRIFFIN et al., Respondents.

502

### COUNSEL

Evelle J. Younger, Attorney General, N. Eugene Hill, Assistant Attorney General, Edmund E. White and James D. Claytor, Deputy Attorneys General, for Petitioner.

Thomas J. McBirnie, Frank Evans and Smith, Paduck, Clancy & Wright for Respondents.

### OPINION

**EVANS, J.**—State of California, Employment Development Department (petitioner), seeks review of an order by the Workers' Compensation Appeals Board (Board), denying its petition for reconsideration of a prior order approving a compromise and release proposed by the worker James J. Griffin and State Compensation Insurance Fund (Fund), the employer's compensation insurance carrier. Reconsideration was urged on the ground that the Board, in reducing petitioner's liens for unemployment compensation disability payments made to the respondent Griffin, improperly applied the *Baird* formula[1] to the facts of this case. (Lab. Code, § 4904.)

---

[1]The so-called *Baird* formula, utilized and approved in *California-Western States Life Ins. Co. v. Industrial Acc. Com. (Baird)* (1963) 59 Cal.2d 257 [28 Cal.Rptr. 872, 379 P.2d 328]), is used to calculate the portion of a lien for temporary disability benefits which is recoverable in an instance where the worker compromises his industrial claim for

Respondent Griffin was employed as a property manager by respondent City of Oakland from November 1967 until November 6, 1974. On that date, shortly before noon, he began having sharp and recurring pains in his left chest area. The pains radiated down his left arm to the elbow which became painful and numb. The pains were accompanied by dizziness and shortness of breath. He told his supervisor that he believed he was having a heart attack. The supervisor drove him to the emergency room at the Oak Knoll Naval Hospital where he was examined, treated and released. The symptoms persisted, and he returned to the hospital the following day. The cardiology department then conducted further examination which resulted in his treatment on an outpatient basis. He was also seen and treated by a private physician, Dr. H. E. Erausquin. Griffin had been treated previously at Oak Knoll Naval Hospital for hypertension and angina pectoris in 1970 as a military retiree.

Subsequent medical examination validated the earlier diagnosis of hypertension and angina pectoris and further revealed Griffin to be suffering from cardiovascular disabilities including atherosclerotic disease of the coronary arteries. The examining physicians disagreed on the issue of industrial causation. Dr. Breall, who examined Griffin at the request of the insurance carrier, reported that "Cardiac catheterization and coronary angiography should be performed if Mr. Griffin becomes incapacitated with angina pectoris pains beyond his capability to lead a meaningful existence." Griffin's private physician, Dr. Erausquin, reported as follows:

"In regard to prognosis, I believe that [with] persistent angina, peripheral edema and dyspnea even with very adequate therapy, [it] should be considered guarded. Provisions, therefore, should be made for such procedures as 'coronary by-pass' surgery in the future which may not only improve considerably his functional potential but also prove to be a life saving measure."

On November 7, the day after the cardiovascular episode, Griffin filed a claim for unemployment compensation disability benefits, alleging disability as the result of the injury to his cardiovascular system.

temporary and personal disability. The formula as established in the *Baird* case and approved by the California Supreme Court may be stated mathematically as follows: ✕ (allowed lien recovery) equals:

$$\frac{L \text{ (lien claim)}}{V \text{ (full value of case)}} \quad \text{multiplied by}$$

(S (settlement) minus M (estimated medical expenses))

Maximum weekly payments of $119 were made beginning November 13, 1974, continuing through May 14, 1975. On that date, Griffin had received the maximum allowed by law, $3,094. On November 26, 1974, Griffin commenced workmen's compensation proceedings, by filing an application for adjudication of claim alleging industrial causation of his cardiovascular injury, specifically, the stresses of his job. Petitioner filed notices and requests for allowance of lien on December 11, 1974, and again on May 21, 1975, seeking recovery of the $3,094 paid to Griffin. A pretrial hearing was held July 23, 1975, at which the issues were determined to be (a) causation of the injury; (b) need for treatment; (c) liability for self-procured treatment; (d) claim for temporary disability indemnity; (e) permanent disability; and (f) lien claim of petitioner for unemployment compensation disability benefits. The trial was scheduled for October 8, 1975.

On August 8, 1975, a proposed compromise and release was submitted to the Board by Griffin and Fund. The gross compromise amount was $11,086.55. Attached to the compromise agreement was a *Baird* (fn. 1, *ante*, p. 503) formula computation which used a full value of $26,000 for the injury, and $5,000 as the amount to be allocated to Griffin's past and future medical expenses. It provided for a lien recovery to petitioner of $595. Petitioner objected to the inclusion of $5,000 as past and future medical expense in the proposed settlement, claiming such expenses must be limited to $541.55, Griffin's actual prior medical expense. Petitioner argues, "[i]t would appear that any future medical expenses would be minimal because the applicant receives his medical treatment from the United States government at no cost." Petitioner submitted a new *Baird* formula calculation which resulted in a calculated lien of $1,518.48. Petitioner's calculation uses the full value reduced by the difference between $5,000 and $541.55 as medical expenses.

A hearing limited to the issue of petitioner's lien claim was held October 8, 1975. At that time the proposed compromise was amended to reflect an increase in the settlement amount to $11,195.85 and a request by Griffin and Fund that the lien allowed be increased to $724.30.

An "Order Approving Compromise and Release As Raised" was filed by the referee on December 1, 1975. The lien recovery allowed petitioner was $724.30. The computation resulting in this amount was in error. It was premised upon the initial compromise amount of $11,086.55 rather than the increased settlement amount of $11,195.85 approved in the

referee's order. The correct amount of lien recovery should have been $737.31. The referee, referring to petitioner's objection to the compromise, stated, "Employment Development Department's position that medical treatment and the future costs thereof may not be considered because applicant is eligible for treatment at the Naval Hospital is erroneous. [Citation to record.] This approach pursued to its logical conclusion would allow industry to shift the cost of treatment for industrial injury to the general taxpayer."

Petitioner promptly filed for reconsideration alleging error in the use of $5,000 as the amount allocable to Griffin's past and future medical cost. The petition asserted that Griffin would not have medical expenses in excess of $541.55 and as a result, the referee was without power to reduce its lien claim to $724.30 rather than $1,518.48. On February 23, 1976, the Board filed its opinion and order denying reconsideration. The Board noted the absence of any "adequate showing in the record that the applicant may not be required to pay either past or future medical expenses even though the Veterans Administration has not sought repayment of the cost of the medical care furnished to applicant by the Veterans Administration. In the future applicant may not be provided with, or may not elect to obtain his medical care from the Veterans Administration. The Veterans Administration could file a lien. [Citation.]

"The [Board] finds on the basis of the authorities cited above and on the basis of the evidence that the settlement of the petitioner's lien claim based on the use of estimated medical expenses in the amount of $5,000.00 is reasonable and proper. In any event the 'Baird formula' is not the exclusive method of allocating funds under a compromise and release and we are persuaded that the settlement of the matter and of the lien of Employment Development Department in the amount of $724.30 whether strictly in accordance with the *Baird* formula or not is fair and equitable."

Petitioner seeks our review of the Board's decision contending the Board acted arbitrarily in its reduction of petitioner's lien from $3,094 to $724.30. The specific challenge is directed to the inclusion in the *"Baird* formula"* computation the sum of $5,000 as an estimate of Griffin's past and future medical expenses.

■ We acknowledge, as do the parties, that the *Baird* formula is not the only method available for use in reducing a lien claim. It is, however,

an approved method of achieving a fair and equitable result. (*California-Western States Life Ins. Co.* v. *Industrial Acc. Com.* (1963) 59 Cal.2d 257 [28 Cal.Rptr. 872, 379 P.2d 328].)

■ It is indisputable that the Board is vested with discretionary power to reduce liens for unemployment compensation benefits in the event of a compromise and release of a disputed claim for compensation. (*Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd.* (1974) 13 Cal.3d 20, 25 [117 Cal.Rptr. 678, 528 P.2d 766].)

Labor Code section 4904 provides in part, "In the case of agreements for the compromise and release of a disputed claim for compensation, the applicant and defendant may propose to the appeals board, as part of the compromise and release agreement, an amount out of the settlement to be paid to any lien claimant claiming under subdivision (f) or (g) of Section 4903 [liens for unemployment compensation disability benefits and unemployment compensation benefits]. The determination of the appeals board, subject to petition for reconsideration and to the right of judicial review, as to the amount of lien allowed under subdivision (f) or (g) of Section 4903, whether in connection with an award of compensation or the approval of a compromise and release agreement, *shall be binding on the lien claimant,* the applicant, and the defendant, insofar as the right to benefits paid under the Unemployment Insurance Code for which the lien was claimed." (Italics added.)

Petitioner founds its contention that Griffin's past and future medical expense estimate should have been limited to his actual costs of $541.55 on several grounds. These are: (1) the United States Government has not filed a lien for recovery of the medical benefits furnished by the Veterans Administration and is without authority to do so in the future; (2) inasmuch as Griffin has obtained past medical treatment from the Veterans Administration, it must be inferred that he will continue to do so; and (3) the result reached by the Board was neither fair nor equitable.

I

■ Petitioner predicates his argument that a lien is unavailable to the Veterans Administration upon United States Code, title 42, section 2651, which provides for lien claims only where the injury for which medical care is furnished occurs "under circumstances creating a tort liability

upon some third person . . . ." (§ 2651, subd. (a).) However, Code of Federal Regulations, title 38, section 17.48, subdivision (d), a regulation of the Veterans Administration, enacted under authority of United States Code, title 38, section 621, provides in part:

"(d) Persons hospitalized pursuant to paragraph (c)(1), (d) or (f) of § 17.47, *who it is believed may be entitled to* hospital care or medical or surgical *treatment or to reimbursement* for all or part of the cost thereof *by reason of* any *one* or more *of the following*:

" . . . (iii) '*Workmen's Compensation*' or 'employer's liability' statutes, State or Federal; . . . *will not be furnished* hospital *care,* medical *or* surgical *treatment, without charge* therefor *to the extent* of the amount for which *such parties,* referred to in paragraph (d)(1) or (2) of this section, *are, or will become liable.* Such patients will be requested to execute an appropriate assignment as prescribed in this paragraph. Patients who, it is believed, may be entitled to care under any one of the plans in paragraph (d)(1) of this section, will be requested to execute VA Form 10-2381, Power of Attorney and Agreement." (Italics added.)

The Veterans Administration has not submitted a lien claim nor is there anything in the record to indicate that Griffin executed an assignment in favor of the Veterans Administration. However, it should not be concluded from these facts that the Veterans Administration will not attempt to recover from Griffin some part of the cost of medical services rendered in the past or more importantly, that totally free medical care will be furnished in the future. The regulation noted, however, is authority for the Veterans Administration to require an assignment from Griffin or. to charge him for medical services rendered in the future.

## II

The record fails to support the premise most vital to the position asserted by petitioner that Griffin will seek and obtain all future medical treatment from Veterans Administration facilities. The record demonstrates to the contrary. Griffin has not done so in the past; he received much of his care following the recent acute episode, from his private physician Dr. Erausquin.

Further, the compensation law does not require an injured workman who may be eligible for free care to choose such care to the

exclusion of all other medical services. A worker who suffers an industrial injury has the right to medical care at the expense of his employer. (*Zeeb* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 496, 500-501 [62 Cal.Rptr. 753, 432 P.2d 361].) ▮ Inasmuch as Griffin is not required to obtain his future medical care and treatment exclusively from the Veterans Administration, and since the record fails to demonstrate that he has done so in the past, petitioner's argument that the Board was compelled to draw the inference that he would do so in the future has no validity. It is settled that the worker's compensation law is to be construed and applied liberally in favor of the injured workman. (Lab. Code, § 3202; *Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399 [71 Cal.Rptr. 678, 445 P.2d 294]; *Brennfleck* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.App.3d 666 [84 Cal.Rptr. 50].) To draw the conclusion advanced by petitioner as to Griffin's future medical care requires us to resort to speculative inferences in a manner contrary to the worker's interest.

### III

Finally, petitioner claims unfairness and inequity on the basis of a result which allows the injured worker to recover 43 percent of the full value of his case while petitioner may recover only 23 percent of its total lien. Petitioner has failed to cite authority, nor do we find any, requiring equal mathematical percentage recoveries for all parties. In every instance of a compromise and release utilizing the *Baird* formula, the percentage recoveries will not be equal. Recalling the *Baird* formula (fn. 1, *ante,* p. 503), the variables are: the total UCD lien claim, the value of the worker's case, if fully compensable, the settlement amount of the compromise and release, estimated past and future medical costs, and allowable recovery on lien claim.

▮ Assuming the full value of the worker's case to be more than the total lien claim, and past and future medicals to be zero, the allowed lien recovery will bear the same ratio to the total lien claim as the worker's settlement bears to the full value of his case. Thus, in the absence of a medical expense deduction, the percentage recoveries of the unemployment compensation disability lien claimant and the worker compromising the case will be identical. However, once a deduction is made in the formula for medical expenses, the percentage recoveries diverge. The worker's percentage of recovery is constant, while that of the lien claimant diminishes in direct relation to the amount of medical expense deducted. The *Baird* formula provides for the deduction of medical

expenses, thus necessarily producing a disparity in the percentage recoveries of the parties. Such results have been judicially approved as fair and equitable. (*California-Western States Life Ins. Co.* v. *Industrial Acc. Com., supra,* 59 Cal.2d 257; *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd., supra,* 13 Cal.3d 20.)

The record fails to support petitioner's claim that the Board acted arbitrarily by reducing the lien claim in applying within the *Baird* formula estimated amounts of $5,000 for past and future medical expenses.

The cause is remanded to the Workers' Compensation Appeals Board with directions to correct the lien award in a manner consistent with this opinion. In all other respects the order is affirmed.

Puglia, P. J., and Regan, J., concurred.

A petition for a rehearing was denied October 20, 1976.