Kirk **WEIDENAAR**, Plaintiff,

v.

**INDIANA INSURANCE CO.**, Defendant.

No. 2:93 cv 243 JM.

United States District Court,
N.D. Indiana,
Hammond Division.

Jan. 23, 1995.

Robert D. Brown, Merrillville, IN, for plaintiff.

Peter J. Agostino and Edward N. Kalamaros, South Bend, IN, for defendant.

### ORDER

MOODY, District Judge.

Before the court are cross-motions for summary judgment on Count I of plaintiff Weidenaar's complaint.[1] In Count I Weidenaar seeks a declaration that defendant Indiana Insurance Co.'s ("IIC") worker's compensation lien on a judgment he obtained against third parties in state court must be reduced by 40%, that being the jury's assessment of Weidenaar's fault for his injuries. (Count II of the complaint seeks compensatory and punitive damages for Weidenaars' emotional distress caused by IIC's "grossly negligent" and "malicious" behavior in refusing to reduce the lien.)

The essential facts are not disputed. On December 22, 1988, Weidenaar, an employee of Korellis Roofing, suffered a serious on-the-job injury. IIC insured Korellis Roofing's worker's compensation risk. Shortly after the accident Weidenaar agreed to accept insurance benefits from IIC for his injuries. Under Indiana's worker's compensation law, that entitled IIC to a lien on any recovery Weidenaar might obtain from a third party

---

1. Plaintiff's motion is captioned as being for "partial" summary judgment. Whatever the parties' motions are called, because neither seeks to dispose of the entire case, the court's disposition is simply an adjudication of a controlling issue, not a judgment. FED.R.CIV.P. 56(a), (d); Notes of Advisory Committee on Rules, 1946 Amendment to Subdivision (d) of Rule 56.

responsible for his injuries. Ind.Code § 22–3–2–13.

On December 17, 1990, Weidenaar filed suit against Amoco Oil Company and Northern Indiana Public Service Company, asserting their negligence caused his injuries. On December 9, 1992, the jury returned a verdict for Weidenaar in the amount of $7,000,-000. Because the jury found Weidenaar 40% at fault, judgment was entered for Weidenaar in the amount of $4,200,000. IIC immediately gave notice of its lien in the amount of $529,545.11. After IIC refused to accede to Weidenaar's demand that it reduce its lien by 40%, Weidenaar filed this action.

■ At the time the state court judgment for Weidenaar was entered, as now, Indiana law provided:

> If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in respect to a claim for personal injuries or death and the claimant's recovery is diminished: (1) by comparative fault ... the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished.

Ind.Code § 34–4–33–12. At the time Weidenaar's accident occurred, however, this provision excepted worker's compensation liens; *i.e.,* such liens were not diminished in proportion to the claimant's comparative fault. An amendment effective July 1, 1990, deleted the exception. The parties' dispute centers on which version of the statute applies.

Weidenaar contends that IIC's lien did not exist until he obtained a judgment, so the statute in effect on that date controls. Taking a contrary view, IIC contends the lien existed on the date Weidenaar was injured (because the insured risk, Weidenaar's employer's liability for compensation, was realized then), and so the contours of the lien are

defined by the laws in effect on that date and unaffected by later statutory amendment.

No Indiana case precisely answers the question raised. Cases from other states support both views[2], but provide little help because the worker's compensation lien statutes are not worded identically, and the nature and extent of a statutory lien depends on the statute's terms. *Sowers v. Covered Bridge Tree Service,* 603 N.E.2d 165, 168 (Ind.Ct.App.1992).

Reading the text of Ind.Code § 22–3–2–13, it appears that asking when the lien came into existence is the wrong question. The right question(s) may be, "what obligation does the lien secure, and when did that obligation arise?" As the first paragraph of the statute makes clear, the lien secures the injured employee's (or his dependents') obligation to reimburse his employer (or the employer's insurer) for worker's compensation benefits paid and received, and thus should have no greater scope. As to that scope,

> if the action [against the third party responsible for damages] ... is brought ... and judgment is obtained and paid ..., or settlement is made with the other person, either with or without suit, then from the amount received by the employee or dependents there shall be paid to the employer or the employer's compensation insurance carrier ... the amount of compensation paid to the employee or dependents....

*Ibid.*

As the statute requires reimbursement only if an action is brought and judgment paid or settlement made, finding the lien securing that obligation to create a "vested" right at an earlier point in time would be a strained interpretation. The opposite interpretation, that the lien arises only when it

---

2. Of the view that a worker's compensation lien does not vest on the date of accident and is "inchoate" or "contingent," subject to legislative modification until attaching to a fund, see *Anderson v. Nat'l Carriers,* 240 Kan. 101, 104–05, 727 P.2d 899, 902–03 (1986); *South Central Bell Tele. Co. v. American Holding Corp.,* 548 So.2d 339, 343 (La.Ct.App.1989); *Kaiser Foundation Hospitals v. Workers' Compensation Bd.,* 87 Cal. App.3d 336, 349, 151 Cal.Rptr. 368, 376 (1978).

For the view that a vested lien exists when worker's compensation benefits are paid, see *Fogleman v. D & J Equipment Rental,* 111 N.C.App. 228, 232, 431 S.E.2d 849, 851–52 (1993); *Cosse v. Allen–Bradley Co.,* 612 So.2d 286, 288 (La.Ct. App.1993); *Phillips v. Agway, Inc.,* 88 Misc.2d 1087, 1089–90, 389 N.Y.S.2d 977, 979 (N.Y.Sup. Ct.1976).

attaches to a fund, would be consistent with cases such as *Sowers*, where the court reasoned that § 22–3–2–13 did not impose a lien on $60,000 received pursuant to a settlement loan agreement while

> the litigation was still pending. Under the terms of the loan receipt agreement, it was still .possible that Sowers would have to return the money . . . ; in this sense, the money was more in the nature of a loan than a settlement award, judgment or fund.

603 N.E.2d at 168.

On the other hand, worker's compensation benefits are most often paid, as they were to Weidenaar, before recovery from third parties. In light of cases such as *Goodbub v. Hornung's Estate*, 127 Ind. 181, 26 N.E. 770, 773 (1891) ("the rights of parties under mechanic's lien laws are to be ascertained and fixed by the law in force when the contract is made"), doubt lingers whether it is correct to read the statute as creating no lien rights until judgment. A neat solution, then, would end this dispute without having to definitively resolve the issue, leaving that for the Indiana state courts. Such a solution is readily available, because the relief Weidenaar seeks—a declaration that IIC's lien is reduced *pro rata*—results no matter which approach is taken.

Adopting IIC's view, that the lien is governed by law existing when Weidenaar was injured, the following statute, then in effect, is dispositive:

> In any action tried under this chapter, any subrogation or lien for collateral benefits received by the prevailing party shall be reduced by the ratio of the lower of the prevailing party's judgment or collected judgment to the amount of damages the trier of fact found the prevailing party to have sustained.

Ind.Code § 34–4–33–14 (repealed July 1, 1990). IIC argues that this provision irreconcilably conflicts with § 34–4–33–12's having excepted worker's compensation liens from diminishment. In such a case, IIC believes that Indiana's rules of statutory construction require the general term "any lien" in Section 14 to be construed as limited by the more specific qualification for worker's compensation liens in Section 12. *See Board*

*of Trustees v. Grannan*, 578 N.E.2d 371, 375 (Ind.Ct.App.1991).

This argument is not persuasive. It can as easily be said that Section 14 is the more specific of the two provisions because it refers only to liens on judgments as opposed to the more general recoveries affected by Section 12. Thus, the later-enacted Section 14 can be viewed as a limited (implied) repeal of Section 12. This is the view the Indiana Supreme Court adopted to explain why "judgment" in Section 14 did not limit the meaning of "recovery" in Section 12:

> If the General Assembly had intended to restrict Section 12 to apply only to post-judgment recoveries, the more likely change would have been an amendment of Section 12 itself. Because Section 14 conspicuously omits the exclusion for Worker's Compensation Act and Occupational Disease Act liens, it appears intended to ameliorate the harsh application of those exclusions in Section 12—at least in comparative fault cases resulting in trial. This interpretation is reinforced by the fact that Section 14 was repealed effective July 1, 1990, as part of the same legislation that deleted the exceptions for worker's compensation and occupational disease claims from Section 12.

*Dept. of Public Welfare v. Couch*, 605 N.E.2d 165, 168 (Ind.1992).

█ *Couch's* discussion of the interplay between the two sections is not critical to the Court's holding so, as *dicta*, not a mandate this court must follow. Sitting in diversity, however, it is the court's job to determine the issue presented in this case as it believes the Indiana courts would. *Kutsugeras v. Avco Corp.*, 973 F.2d 1341, 1346 (7th Cir.1992). Here, in the absence of a compelling reason to doubt the view expressed in *Couch*, it would be unwarranted to conclude that "any lien" in § 34–4–33–14 does not include worker's compensation liens.

Accordingly, Weidenaar's motion for partial summary judgment is **GRANTED**; IIC's motion for summary judgment is **DENIED**.

**SO ORDERED.**